**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
GABRIEL COVINGTON,

                       Plaintiff,

               -against-

TGI FRIDAYS and FRIDAY KNIGHTS LLC,

                       Defendants.
--------------------------------------------------------------X

                           **REPORT AND**
                        **RECOMMENDATION**

                     CV 18-1113 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      **PRELIMINARY STATEMENT**

Plaintiff Gabriel Covington ("Plaintiff") commenced the instant action against

Defendants TGI Fridays ("TGIF") and Friday Knights LLC ("Friday Knights") (collectively,

"Defendants"), for whom he was employed as a server, asserting violations of Title VII of the

Civil Rights Act of 1964 ("Title VII") and provisions of the New York State Human Rights Law

("NYSHRL"). *See generally* Plaintiff's Complaint ("Compl.") [DE 2]. Specifically, Plaintiff

alleges that he suffered discrimination and retaliation, was not promoted, and endured a hostile

work environment based on his gender. *See id*. at 3-5. Defendant Friday Knights has moved to

dismiss the Complaint in its entirety. *See* Defendant's Motion to Dismiss ("Def.'s. Mot.")

[DE 16]; Defendant's Memorandum in Support ("Def.'s Mem.") [DE 16-1]; Defendant's Reply

("Def.'s Reply") [DE 20]. Plaintiff opposes the motion. *See* Plaintiff's Opposition to

Defendant's Motion to Dismiss ("Pl.'s Opp'n.") [DE 17].

Judge Bianco has referred Friday Knights' motion to this Court for a Report and

Recommendation as to whether the motion should be granted. *See* DE 21. For the reasons set

forth below, this Court respectfully recommends to Judge Bianco that Friday Knights' motion to dismiss be GRANTED.

## II.   BACKGROUND

### A.   Plaintiff's Complaint[1]

Plaintiff's Complaint contains few allegations regarding the facts underlying his claims. These few allegations are contained on page 5 of the Complaint under the "Facts" sub-heading. For purposes of discussion, the Court quotes Plaintiff's allegations in full, as follows:

> During Employment at TGI Fridays Westbury I have faced acts against me including: discrimination, retaliation, starvation, harsh and hostile work environment and also false documentation of lateness and occurrences which inevitably lead to my determination [*sic*]. During my period at TGIF, I was the top server in sales and other categories when fired due to lateness. A relationship with [petitioner's] employer Noelle, lead to a hostile work environment, no lunch breaks, less shifts, less tables, when on the clock.

Compl. at 5. On page 3 of his Complaint, under the "Federal Claims" sub-heading, Plaintiff has checked the box associated with "sex"[2] as the basis of the alleged conduct for which he seeks redress.

Plaintiff has attached to his Complaint documents associated with the formal Charge he filed with the Equal Employment Opportunity Commission ("EEOC"), including Friday

---

[1]   Plaintiff utilizes the Southern District of New York's employment discrimination form complaint, since this action was initially filed in that district. Thirty-seven pages of documents are attached the Complaint, including Plaintiff's EEOC charge, Friday Knights' EEOC position statement, and the EEOC's Notice of Dismissal and Right to Sue. The Court references Plaintiff's Complaint and its attachments by page number, from pages 1 through 45.

[2]   Both Plaintiff's lawsuit and his formal EEOC Charge allege discrimination based on Plaintiff's sex. The EEOC "NOTICE OF CHARGE OF DISCRIMINATION," however, has the box associated with discrimination based on "race" checked off rather than the box for "sex." *See* Compl. at 18. This notation appears to be a clerical error given the otherwise consistent nature of Plaintiff's allegations as being based on his gender.

2

Knights' response to the Charge.  In his EEOC Charge, Plaintiff makes the following allegations,

which the Court quotes in full:

> I am a 29 year old Afro American male who worked as a server in
> T.G.I. Friday's Restaurant from October 26, 2015 until my
> termination on March 24, 2017.  I believe I was discriminated and
> retaliated against based on sex in violation of Title VII of the Civil
> Rights Act of 1964, as amended, when I was terminated and the
> presented reason for my termination was counterfactual.   My
> complaint is based upon sexual harassment and retaliation which
> was the outcome of wrongful termination.  Specifically, I had sexual
> relations with the service manager Noelle who still works currently
> at the T.G.I. Friday's location in Westbury, Long Island.  I have
> evidence to back up proof of a romantic relationship which
> indefinitely lead to my wrongful termination.  Noelle and I had a
> romantic relationship which ended badly.  This lead to the harsh
> hostile work environment with proof of all.  I kept these records
> while working for the company as evidence:
>
>> (1) Starvation:  I worked over 11 sometimes 12 hours and
>> [was] not given a break and told [I] would be tired [*sic*] if I
>> stopped and ate food on numerous occasions.  Proof includes
>> times [*sic*] sheets and no clock in evidence.  I believe this is
>> illegal.
>>
>> (2) No room for growth (promotion):  I have worked for the
>> company for 2 years and have never been promoted or
>> moved further in the ranks as I was top in sales and best
>> server number wise in every category.  I believe this was a
>> direct retaliation by Noelle, the service manager.
>>
>> (3) No Lateness:  I was fired for being 5 minutes late and no
>> proof or evidence for excessive lateness.  I worked in this
>> company for 2 years and I was late only 3 times but I was
>> still written up for it.  Everybody in staff in addition, comes
>> in late excessively and later then [*sic*] me.
>>
>> (4) Taken off schedule:  I was taken off the schedule for
>> weeks at a time.  This was done by Noelle and other
>> manager's [*sic*] at the time and not given a reason as to why
>> I was erased off the schedule.  I have made numerous calls
>> to Human Resources Dept. and made claims of hostile work
>> environment at the time to back up as proof.  I was also given
>> 3 hours [*sic*] shifts as direct retaliation to my finances while
>> working at the time with Noelle.

3

> Based on the above, I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

Compl. at 20-21.

Apart from his formal EEOC Charge and Friday Knights' written response, *see* Compl. at 10-16, the other documents attached to Plaintiff's form Complaint include: (1) excerpts of Friday Knights' employee handbook, *see id*. at 23-28; (2) 14 separate documents titled "COACHING DOCUMENTATION," appearing to memorialize separate instances where Plaintiff received disciplinary warnings, *see id*. at 30-45; and (3) correspondence from the EEOC notifying Plaintiff that it was "unable to conclude that [Plaintiff's] information establishes a violation of Federal law," along with the formal Notice of Dismissal and Right to Sue letter. *Id*. at 8-9.

**B.    Procedural Background**

Plaintiff filed his formal Charge of discrimination with the EEOC on June 30, 2017. *See* Compl. at 20. On August 9, 2017, the EEOC assigned the matter to the agency's Alternative Dispute Resolution Unit. *See id*. at 18. On or about September 8, 2017, through counsel, Friday Knights filed with the EEOC its response to allegations contained in Plaintiff's Charge, categorically denying Plaintiff's allegations of discrimination and otherwise improper conduct on the part of Friday Knights. *See id*. at 10-16. In a letter dated October 31, 2017, the EEOC notified Plaintiff that it was "unable to conclude that the information [provided by Plaintiff] establishes a violation of Federal law on the part of" Defendants. *Id*. at 9. Along with this letter, the EEOC issued Plaintiff a formal Notice of Dismissal and Right to Sue letter. *See id*. at 8-9.

Plaintiff filed the instant Complaint on or about December 28, 2017 in the United States District Court for the Southern District of New York. *See* Compl. at 7. On February 14, 2018,

this action was transferred to the United States District Court for the Eastern District of New York. *See* DE 5. On February 14, 2018, Plaintiff was granted leave to proceed *in forma pauperis*, and summonses were issued to both Defendants. *See* DE 9. The U.S. Marshal's Service filed the executed summons served on Friday Knights on April 25, 2018.[3] *See* DE 11.

On May 7, 20187, Friday Knights notified Judge Bianco of its intention to move to dismiss the Complaint. *See* DE 12. Judge Bianco waived his pre-motion conference requirement and set a briefing schedule for the motion to dismiss. *See* DE 15. Friday Knights' motion was filed on June 11, 2018. *See* DE 16-17. Plaintiff filed his opposition to Friday Knights' motion on July 9, 2018, *see* DE 17, and Friday Knights filed its reply on July 25, 2018. *See* DE 20. Judge Bianco referred Friday Knights' motion to dismiss to this Court on October 10, 2018 for a Report and Recommendation as to whether the motion should be granted. *See* DE 21.

## III.   STANDARD OF REVIEW

At the outset, the Court observes that *pro se* filings like Plaintiff's Complaint are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive

---

[3] It does not appear from the docket that service was ever effected on Defendant TGIF.

law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19,

2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002));

*Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y.

Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to

adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,

477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules

of procedural and substantive law.") (internal quotations and citations omitted).  Likewise, "mere

conclusions of law or unwarranted deductions need not be accepted."  *Alston v. Sebelius*, No. 13-

CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss

remains applicable here.  The Court must liberally construe the claims set forth in the Complaint,

accept all factual allegations in the Complaint as true, and draw all reasonable inferences in favor

of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720

F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'"

*Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v.

Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

*Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595

F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts

sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at

555).

In deciding a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the Complaint, which allegations are accepted as true; to documents attached to the Complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; and to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014). To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

The Court does not find conversion to a Rule 56 motion to be necessary here. Rather, each of the documents attached to Plaintiff's Complaint – his formal EEOC Charge, Friday Knights' written response to the Charge, excerpts of Friday Knights' employee handbook, internal disciplinary documents relating to Plaintiff, the EEOC letter indicating that the agency was unable to find a violation of federal law, and the EEOC Notice of Dismissal and Right to Sue letter – are properly within the scope of what the Court may consider in evaluating Friday Knights' motion to dismiss. In addition to being attached to the Complaint, each document is heavily relied upon and effectively incorporated into Plaintiff's Complaint. Moreover, those documents which were filed in conjunction with Plaintiff's EEOC Charge may be properly considered by the Court. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) (noting that in ruling on a motion to dismiss "it is proper for this court to consider the plaintiffs relevant filings with the EEOC"). Since conversion to a Rule 56 motion is unnecessary, the Court will proceed with its analysis.

## IV.    DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on the grounds that his scant factual allegations are insufficient to state a claim associated with any of the "adverse employment actions" he identifies on page 5 of his Complaint, namely, retaliation, failure to promote, and creation of a hostile work environment.  *See* Def.'s Mem. at 6-10.  The Court will therefore address each of the asserted causes of action in turn.

### A.    Retaliation

"The elements of a claim of retaliation under Title VII are: (1) that plaintiff engaged in protected activity under Title VII, (2) that the employer was aware of the protected activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action." *Malacarne v. City Univ. of New York*, 289 F. App'x 446, 447 (2d Cir. 2008) (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)).  Under the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), once a plaintiff satisfies the *prima facie* elements of a retaliation claim laid out above, "[t]he burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity." *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 435 (E.D.N.Y. 2009) (citing *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006)).  Since the Court does not evaluate evidence but only the sufficiency of the pleadings at the motion to dismiss stage, the Court does not engage in the *McDonnell Douglas* analysis here.

Rather, the Court looks to the sufficiency of the pleadings in the context of the *prima facie* elements identified above.

### 1. *Protected Activity, Employer Knowledge, and Adverse Employment Action*

"It is well settled that '[t]he term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination.'" *Gilderhus v. Concentrix Corp.*, 825 F. Supp. 2d 414, 431 (W.D.N.Y. 2011) (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000)).  The employment practices need not have actually amounted to a Title VII violation; rather, "the plaintiff must have had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *McMenemy v. City of Rochester,* 241 F.3d 279, 283 (2d Cir. 2001).

The crux of Plaintiff's suit is that he was mistreated by his employer because of his romantic relationship with a service manager.   Although it is not clear that this alleged relationship does or does not constitute "protected activity,"[4] Plaintiff asserts that he complained about mistreatment he says he received based on how the relationship ended.  Specifically, he states he "was taken off the schedule for weeks at a time.  This was done by Noelle and other manager's [*sic*] at the time and not given a reason as to why I was erased off the schedule.  I have made numerous calls to Human Resources Dept. and made claims of hostile work environment at the time to back up as proof." Compl. at 21.  Construing the Complaint in the light most favorable to the Plaintiff, the Court finds that these allegations, scant as they are, are

---

[4]   Friday Knights' motion to dismiss appears to accept that Plaintiff's relationship with his service manager constituted a "protected activity."   *See* Pl.'s Mem. at 7-8.  The Court has been unable to find any law to support that a consensual relationship in itself fits within the definition of "protected activity," and sees the proper protected activity as Plaintiff's complaints regarding his treatment following the relationship's termination.

9

sufficient to satisfy the first and second *prima facie* elements of Title VII retaliation:  Plaintiff (1) engaged in a protected activity by complaining about mistreatment he subjectively thought to be unlawful, and (2) made his employer aware by making "numerous calls to [the] Human Resources Department."  *Id.*

Similarly, Plaintiff alleges he was "taken off of [the] schedule" and eventually terminated.  Punitive scheduling is considered to constitute an adverse employment action under Title VII.  *See Hicks v. Baines*, 593 F.3d 159, 168 (2d Cir. 2010) (explaining that plaintiffs' "several punitive scheduling claims[ ] are sufficient to . . . satisfy the third element of their *prima facie* burden of showing an adverse employment action").  Significantly, Friday Knights does not dispute that Plaintiff has sufficiently pleaded an adverse employment action.

### 2.    *Causation*

Plaintiff, however, has failed to plausibly state the existence of a causal connection between the protected activity and the adverse employment actions he alleges he suffered.

"[A] plaintiff must plausibly plead a connection between the [adverse employment action] and his engagement in protected activity."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)).  A plaintiff can accomplish this by pleading facts that indirectly show that the protected activity was taken in close temporal proximity to the adverse employment action.  *See Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").  Although the Second Circuit has not "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 497 (E.D.N.Y. 2016) (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir.

10

2001)), generally, the temporal proximity "must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation omitted); *see Vega*, 801 F.3d at 90; *Pothen*, 211 F. Supp. 3d at 497.

Here, Plaintiff pleads no facts from which the Court can infer the time frame in which the alleged sequence of events took place.  Importantly, it is impossible for the Court to tell when Plaintiff either (1) complained to HR regarding his alleged mistreatment, or (2) was taken off the schedule prior to his termination.  Without having a sense of when he allegedly engaged in a protected activity or suffered the first adverse employment action (prior to termination), Plaintiff has failed to plead facts sufficient to satisfy the causation element of his retaliation claim.[5]  For this reason, the Court respectfully recommends to Judge Bianco that Friday Knights' motion to dismiss be GRANTED with respect to Plaintiff's retaliation claim.

### B.    Failure to Promote

A *prima facie* failure to promote claim under Title VII "requires the plaintiff to demonstrate that '1) he is a member of a protected class; 2) he applied for promotion to a position for which he was qualified; 3) he was rejected for the position; and 4) the employer kept the position open and continued to seek applicants.'" *Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 485 (E.D.N.Y. 2016) (quoting *Mauro v. Southern New England Telecomm., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000)), *aff'd*, 713 Fed. App'x 53 (2d Cir. 2017).  As with his retaliation claim, Plaintiff fails to adequately state a *prima facie* claim for failure to promote.

---

[5]   The Court notes that, additionally, "a plaintiff must plausibly allege that the retaliatory action was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90; *see Pothen*, 211 F. Supp. 3d at 497.  Plaintiff has also failed to satisfy this burden.

While the Court assumes *arguendo* that Plaintiff has satisfied the first element of his *prima facie* failure to promote claim by pleading that he is African-American,[6] his pleading fails to plausibly allege, or come close to alleging, the other three elements of a *prima facie* failure to promote claim. Indeed, Plaintiff's failure to plead that he *applied* for a promotion (or even that any positions were available) necessarily precludes him from alleging that he was rejected for such a position or that such a position was kept open after his application. As a result, his Complaint does not state a failure to promote claim as a matter of law. *See Breland-Starling v. Disney Pub. Worldwide*, 166 F. Supp. 2d 826, 830 (S.D.N.Y. 2001) ("The law on this question is clear and unmistakable: plaintiff must demonstrate that she applied for a particular position for which she was qualified and may not bring a claim 'merely asserting that on several occasions she . . . generally requested promotion.'") (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)). For this reason, the Court respectfully recommends to Judge Bianco that Friday Knights' motion to dismiss be GRANTED with respect to Plaintiff's failure to promote claim.

### C.    Discrimination[7]

To plead a *prima facie* claim of discrimination under Title VII, a plaintiff must allege that "(1) he belongs to a protected class; (2) he was qualified for the position that he held; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Cardin v. Securitas Sec.*

---

[6] It is worth noting that Plaintiff's protected class membership as an African-American is not the basis for his alleged discriminatory treatment, which, as he alleges, is his gender. The Court does not address what if any effect this disconnect may have on his ability to adequately plead his claims.

[7] Although it is not clear that Plaintiff asserts an independent Title VII discrimination claim, in an abundance of cation the Court construes Plaintiff's pleadings to raise one.

*Servs. USA, Inc.*, No. 16-CV-6101, 2018 WL 562941, at \*3 (S.D.N.Y. Jan. 24, 2018) (citing

*Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Before addressing Plaintiff's allegations, the Court must address the appropriate pleading

standard which differs slightly for employment discrimination claims.  Prior to deciding either

*Iqbal* or *Twombly*, the Supreme Court in *Swierkiewicz v. Sorema, N.A.* made clear that "under a

notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a

prima facie case" of employment discrimination because "the ordinary rules for assessing the

sufficiency of a complaint apply."  534 U.S. 506, 508, 511 (2002).  Notwithstanding the

doctrinal shift which took place in the movement from the "no-set-of-facts" standard articulated

in *Conley v. Gibson,* 355 U.S. 41 (1957) to the now familiar "plausibility" standard articulated in

*Iqbal* and *Twombly*, "the Supreme Court, in *Twombly,* reaffirmed its statement from

*Swierkiewicz* that an employment discrimination plaintiff need not establish a *prima facie* case at

the pleading stage." *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460,

465 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 570).  "Rather, an employment discrimination

complaint must include only a short and plain statement of the claim that gives the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests." *Kunik v. New York*

*City Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at \*4 (S.D.N.Y. Sept. 29, 2017)

(internal quotation omitted).  And yet, while "the elements of a *prima facie* case under

*McDonnell Douglas* need not be established at the pleading stage, these elements nevertheless

'provide an outline of what is necessary to render a plaintiff's employment discrimination claims

for relief plausible.'" *Trachtenberg*, 937 F. Supp. 2d at 466 (quoting *Kassman v. KPMG LLP,*

925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)).

The Court assumes *arguendo* that Plaintiff has plausibly alleged membership in a class protected by Title VII, that he suffered an adverse employment action, and that his tenure at TGI Friday's is sufficient to draw an inference that he was qualified for his position. However, even when reading the Complaint and other papers in the light most favorable to the Plaintiff, the Court does not find that any of the adverse employment actions he alleges occurred under circumstances giving rise to an inference of discriminatory intent. Since direct evidence of discrimination is rare,

> courts examine a variety of factors to evaluate whether there exists "a permissible inference of discriminatory intent": (1) an employer's practice of interviewing replacements for plaintiff with qualifications substantially similar to plaintiff; (2) an employer's criticism of plaintiff "in ethnically degrading terms"; (3) an employer's "invidious comments" about other individual's [*sic*] in plaintiff's protected group; (4) an employer's favoritism towards other employees not in the protected group; and (5) the events leading up to and timing of plaintiff's discharge.

*Tubo v. Orange Reg'l Med. Ctr.*, No. 13-CV-1495, 2015 WL 5945853, at *7 (S.D.N.Y. Oct. 13, 2015) (quoting *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994)), *aff'd*, 690 Fed. App'x 736 (2d Cir. 2017); *see Littlejohn*, 795 F.3d at 312; *Roa v. Mineta*, 51 Fed. App'x 896, 899 (2d Cir. 2002) ("An inference of discrimination may be drawn from a showing that a similarly situated individual that is not in the plaintiff's protected class was more favorably treated."). Plaintiff's pleadings allege none of these factors with respect to either his gender or his race. Significantly, although Plaintiff makes a single reference to "[e]verybody in staff" coming in late, Compl. at 21, there are no allegations as to whether any of these other employees are outside of Plaintiff's protected class.

14

Given the absence of any allegations allowing the Court to plausibly infer discriminatory intent, the Court respectfully recommends to Judge Bianco that Friday Knights' motion to dismiss with respect to Plaintiff's Title VII discrimination claim be GRANTED.

**D.      Hostile Work Environment**

To plead a hostile work environment claim, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451-52 (E.D.N.Y. 2011) (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000)).  The allegations must plausibly state that the complained of conduct "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 425 (E.D.N.Y. 2012) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

Despite using the term "[s]tarvation," Compl. at 20, the Court finds that Plaintiff's Complaint fails to plausibly state a claim for hostile work environment.  Simply put, Plaintiff's scant allegations fail to adequately allege that Plaintiff's working conditions were objectively severe or pervasive, or that such an environment was the product of Plaintiff's membership in a protected class. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (explaining that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'").

Given the absence of particularized allegations sufficient to state a *prima facie* claim for hostile work environment, the Court respectfully recommends to Judge Bianco that Friday

15

Knights' motion to dismiss be GRANTED with respect to Plaintiff's hostile work environment claim.

### E.      Claims Under the NYSHRL

To the extent Plaintiff asserts the above causes of action under the NYSHRL in addition to Title VII, *see* Compl. at 4, these claims are analyzed under the same standard. *See Smith*, 798 F. Supp. 2d at 451 (citing *Schiano v. Quality Payroll Systems, Inc.,* 445 F.3d 597, 609 (2d Cir. 2006)). Therefore, for the reasons identified above, the Court respectfully recommends to Judge Bianco that Friday Knights' motion to dismiss these claims be GRANTED.

### F.      Leave to Amend

It does not appear that Plaintiff has requested leave to amend his Complaint. However, the Court has considered whether the Plaintiff should be given an opportunity to re-plead his various claims against the Defendants. "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.,* 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *see Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them."). A court should only deny a *pro se* plaintiff leave to amend when "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims." *Pangburn v. Culbertson,* 200 F.3d 65, 71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

In accordance with this liberal standard, the Court respectfully recommends to Judge Bianco that Plaintiff be granted leave to amend his Complaint.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Friday Knights' Rule 12(b)(6) motion to dismiss be GRANTED in its entirety.  The Court further recommends that Plaintiff be granted leave to amend his Complaint.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Defendants' counsel is directed to serve a copy of this Report and Recommendation on the pro se plaintiff forthwith by overnight mail *and* first-class mail and to file proof of such service on ECF no later than January 10, 2019.**

                                        **SO ORDERED.**

Dated: Central Islip, New York
          January 7, 2019

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge